## FAIN–TOWNSEND CO. v. BARKER et al.

### No. 10448.

Court of Civil Appeals of Texas. Galveston.

Oct. 28, 1937.

Rehearing Denied Nov. 18, 1937.

Aldrich & Crook, of Crockett, and Goggans & Ritchie and William P. Goar, all of Dallas, for appellant.

Leroy L. Moore, of Crockett, for Mrs. Mary E. Barker.

CODY, Justice.

In the court below appellant recovered a personal judgment against Mrs. Mary E. Barker for the sum of $1,098.95, together with interest, but was denied the fore-closure of its asserted paving lien on a house and lot, belonging to Mrs. Barker as her separate property, fronting 207 feet on East Second street in the city of Crockett; and plaintiff appeals from the judgment denying its asserted lien.

Appellant concedes that, if, on September 26, 1929, the property in question was the homestead of Mrs. Barker and her husband, E. L. Barker, as found by the jury, the assessment then made by the governing body of the city of Crockett did not create a lien on the property, but only a personal liability against Mrs. Barker, who owned it. Mr. Barker was a party to the suit, cited by publication, and represented by an attorney ad litem.

The testimony was: That in 1917, before she married Mr. Barker, Mrs. Barker was a widow with two dependent children living in Crockett, and then bought the property in question. That she and her children lived in the house and on the property for about two years, and then went to Houston to accept employment in a store. That a few months later she married her present husband, Mr. Barker, and, in a week or two after their marriage, there was deeded to Mr. Barker and herself a house and lot for a cash considera-tion of $500, the balance of the considera-tion being evidenced by a vendor's lien note for $3,500 payable in monthly install-ments. Mrs. Barker testified that the cash consideration paid for the Houston prop-erty was money belonging to her two children, and that it was bought as an investment for them.

The testimony further showed that Mrs. Barker and her children lived during the winter months in Houston, where the children went to school; that during the summer months she and the children lived in Crockett on the property in question. Mr. Barker was a traveling man, and only spent the week ends with his family. When his family were in Houston, his week ends were spent with them there; when his family were in Crockett, his week ends were spent with them there. Mr. and Mrs. Barker separated in 1928; but so long as they lived together, the testimony was that this practice was fol-lowed. In fact the year 1929 was the only summer she did not spend in Crockett, and she testified that that year she was not well, and remained in Houston with the children of her union with Mr. Barker; but her two children by her former marriage returned to Crockett for the sum-mer as usual and spent part of their time in the Crockett property, and part of their time in the country out from Crockett with relatives and friends. Mrs. Barker further testified that when she moved to Houston she did not remove her household goods from Crockett, and, up until the time she

came back to Crockett to live both winter and summer, some four years before the trial, she had never removed all of her household goods, but kept them at the Crockett property. That she had always kept her chickens there. That she moved to Houston, as stated before, to work, and after she got there she stayed so the children could go to Houston schools. Mrs. Barker further testified that she and Mr. Barker had always considered the Crockett property as their home.

Appellant contends, and we think correctly, that when Mrs. Barker married Mr. Barker she automatically lost the legal power to designate the family homestead. Appellant takes the statement by Nunn in his Texas Homestead and Other Exemptions, chapter 4, section 2, page 98, as the correct test to determine whether the homestead character has been impressed on property: "There is no constitutional or other statutory provision directing the manner by which the homestead character is impressed upon land other than the stipulation: 'provided that the same shall be used for the purpose of a home, or as a place to exercise the calling or business of the head of the family.' In the judicial interpretation and application of this provision it has become well settled that the homestead character is impressed upon property: (a) by the actual use and occupancy of the property as a homestead; (b) or by a present intent to use and occupy the same, coupled with acts of preparation, demonstrating such intent."

But the testimony of Mrs. Barker indicated that there was an actual occupancy and use of the Crockett property by Mr. Barker, Mrs. Barker, and their family every year that they lived together. It is true that they occupied it as a home only during the summer months when the children were not in school at Houston, but it is obvious that a man and his family do not have to use and occupy premises the year round to impress it with a homestead character. The truth seems to be that the Barkers led a migratory existence, having their home in the winter months in Houston, and in Crockett in the summer months. We cannot agree with appellant that, when the Houston property was bought, and became occupied for the winter months, it became their homestead as a matter of law. There was sufficient evidence before the jury to sustain their finding that the Crockett property was the homestead of E. L. Barker and wife, Mary E. Barker, on the 26th day of September, 1929, the day the paving assessment was levied. We find the court did not err in rendering judgment on the jury's findings. The judgment is affirmed.

Affirmed.